Weddell v Trichka (2021 NY Slip Op 07340)





Weddell v Trichka


2021 NY Slip Op 07340


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

532946
[*1]Laura J. Weddell, Appellant,
v
Stephen J. Trichka, Respondent.

Calendar Date:November 15, 2021

Before:Lynch, J.P., Clark, Aarons and Pritzker, JJ.

Garufi Law PC, Binghamton (Alena E. Van Tull of counsel), for appellant.
Hinman, Howard & Katell, LLP, Binghamton (Katherine A. Fitzgerald of counsel), for respondent.



Aarons, J.
Appeal from an order of the Supreme Court (Tait, J.), entered February 9, 2021 in Broome County, which granted defendant's motion for partial summary judgment.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1988. After subsequently separating, they entered into a separation agreement in 2018. The wife commenced this action in 2019 seeking, as relevant here, an order vacating the separation agreement. Following joinder of issue, the husband moved for partial summary judgment. Supreme Court granted the motion. The wife appeals. We affirm.
"A separation agreement is a legally binding and enforceable contract" (Matter of Dillon v Dillon, 155 AD3d 1271, 1272 [2017] [citations omitted]). It may nonetheless be set aside "based on evidence of one party's overreaching, fraud, duress or a bargain so inequitable that no reasonable and competent person would have consented to it" (Suchow v Suchow, 157 AD3d 1015, 1016 [2018] [internal quotation marks and citation omitted], appeal and lv dismissed 31 NY3d 1075 [2018]; see Mesiti v Mongiello, 84 AD3d 1547, 1548 [2011]). That said, "spouses are encouraged to resolve their own issues and judicial review of separation agreements is to be exercised sparingly" (Marin-Brown v Brown, 79 AD3d 1302, 1303 [2010]; see Lounsbury v Lounsbury, 300 AD2d 812, 814 [2002]).
The record discloses that the parties executed the settlement agreement before a notary. The settlement agreement provided, among other things, that the wife would receive monthly spousal maintenance for a certain period of time, that they would equally split the proceeds of a non-retirement investment account, that the husband would give the wife $1,500 for a lease deposit and that the husband agreed to pay all credit card charges made by either party through the date of such agreement. It also stated that "[t]he parties acknowledge that the disposition of the marital property as agreed to herein is fair and equitable to each" and that they accepted the terms of the settlement agreement "in full satisfaction of their rights under the equitable distribution law of the State of New York." The settlement agreement further stated that each party understood that "he or she may be prevented from further asserting any right to equitable distribution."
The wife's contention that the settlement agreement was the product of duress or overreaching is unavailing. Although the wife was not represented by counsel during any negotiations leading to the settlement agreement, she was an attorney and there was no indication that she was prevented from seeking the advice of counsel of her own choosing (see Sullivan v Sullivan, 46 AD3d 1195, 1196 [2007]; Buffett v Buffett, 166 AD2d 819, 820 [1990]). Furthermore, her claim of mental anxiety and panic attacks suffered around the time the settlement agreement was executed was conclusory and not supported by medical evidence (see Marin-Brown v Brown, 79 AD3d at 1303; Lyons [*2]v Lyons, 289 AD2d 902, 904 [2001], lv denied 98 NY2d 601 [2002]). To the extent that the wife contends that the husband threatened her with divorce if she did not agree to the terms of the settlement agreement, such threat does not amount to duress (see Garner v Garner, 46 AD3d 1239, 1240 [2007]).
The wife also argues that the settlement should be set aside based upon the husband's alleged fraud in failing to disclose the entirety of his financial assets. The settlement agreement, however, provided that each party had the right to complete financial disclosure from the other party but that each party waived the right to any formal financial disclosure. The husband also tendered evidence that he and the wife had a meeting with their financial advisors wherein the parties' financial assets were reviewed. The financial advisors averred that each party had the individual authority to contact them and ask them any questions. The wife does not dispute that she attended this meeting and merely stated in an affidavit that she did not take notes at this meeting and that she "did not pay close attention." Because the wife's inattention does not amount to fraud by the husband, her argument is without merit (see Anonymous v Anonymous, 123 AD3d 581, 583 [2014]; Dayton v Dayton, 175 AD2d 427, 428 [1991], lv denied 78 NY2d 863 [1991]).
Finally, contrary to the wife's assertion, the settlement agreement should not be set aside as unconscionable given that it was not "so one-sided as to shock the conscience" (Mesiti v Mongiello, 84 AD3d at 1550 [internal quotation marks and citation omitted]; see Bishopp v Bishopp, 104 AD3d 1121, 1123 [2013]; Giustiniani v Giustiniani, 278 AD2d 609, 611 [2000], lv denied 96 NY2d 706 [2001]). Accordingly, Supreme Court correctly granted the husband's motion (see Garner v Garner, 46 AD3d at 1241). The wife's remaining contentions are either academic or unavailing.
Lynch, J.P., Clark and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.